**Robert C. HEINE, Plaintiff,**

v.

**RECEIVING AREA PERSONNEL, et al, Defendants.**

**Civ. A. No. 85–181 LON.**

United States District Court,
D. Delaware.

April 14, 1989.

Norman E. Levine, of Levine and Thompson, Wilmington, Del. (Theresa H. White, of Harris and Smith, Media, Pa., of counsel), for plaintiff.

John J. Polk, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

LONGOBARDI, District Judge.

The Plaintiff, Robert C. Heine, brought this suit under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and various pendent state law claims against two correctional officers and three supervisory officials of the Delaware Department of Corrections. Plaintiff seeks damages for the alleged deprivation of his constitutional rights that occurred during the intake procedure at the Multi-Purpose Criminal Justice Facility ("Gander Hill") following the Plaintiff's arrest on an

outstanding capias on March 28, 1983. The Plaintiff alleges that correctional officers Rafael Castro and Jose Pacheco acted "recklessly" and in "deliberate disregard" of a constitutional liberty interest by failing to protect Plaintiff from being sexually assaulted by another prisoner. The Plaintiff further alleges that the supervisory officials Captain Correll, Warden Young and Commissioner Sullivan failed to properly supervise the correctional officers so as to prevent the sexual assault. The Defendants have moved for summary judgment on the ground that the Plaintiff has failed to establish a genuine issue of material fact as to the presence of each and every element of his claim sufficient to sustain a claim under Section 1983.

## I. FACTS

Plaintiff was arrested on March 28, 1983, on an outstanding capias and was brought to Gander Hill between 8:30–9:30 p.m. Shortly after his arrival, the Plaintiff was taken to the main desk in the Booking and Receiving Area ("BARC") where Officers Castro and Pacheco were assigned to process new prisoners. As part of this process, Officers Castro and Pacheco took possession and inventory of Plaintiff's personal items, completed personal information forms and fingerprinted and photographed the Plaintiff. Also present in BARC at this time were prison inmates James Townsend and Morris Jones who were working as clean-up men in the prisoner workers program inmate workers program.

Officer Castro directed the Plaintiff to accompany inmate Townsend to the clothing and showering rooms. Although this was in apparent violation of standing orders not to entrust new inmates to prison workers, neither Officer Castro nor Officer Pacheco were aware that Townsend presented a risk of impending harm to the Plaintiff. In the clothing room, Townsend told Plaintiff to undress and place his clothes in a bag on a desk. Townsend then instructed Plaintiff to proceed into the shower room where Townsend sprayed him with a delousing agent. Thereafter, Plaintiff returned to the clothing room to allow the chemical to take effect before he show-

ered. During this interval Plaintiff engaged in conversation with the two inmates, Townsend and Jones. After a few minutes the chemical began to irritate Plaintiff's skin and Townsend directed him to take a shower.

Approximately five minutes after entering the shower, Townsend, holding a pipe, opened the shower curtain and told Plaintiff he wished to engage in certain sexual conduct with him. It is uncontested that during the next few minutes Townsend sexually assaulted the Plaintiff by forcing him to commit sodomy and masturbation. The Plaintiff apparently called for help several times during the assault but no prison official heard his outcry. It is further uncontested that neither Officer Castro nor Officer Pacheco were aware that Plaintiff was being assaulted by Townsend in the shower room. Approximately ten minutes later, Plaintiff left the shower room and proceeded to the clothing room where he dressed in prison clothes.

Plaintiff then returned to the main area in BARC and Officer Castro placed him in a holding cell with other detainees. Sometime later, Plaintiff informed Officer Castro that he was not feeling well. Castro placed the Plaintiff in a cell by himself and called the infirmary to request medical attention. Nurse Doris Lawson subsequently examined Plaintiff and gave him a cup of liquid aspirin. After he was assigned a new housing cell, Plaintiff informed Officer William Semanovick, who was responsible for guarding the housing unit where Plaintiff was located, about the incident in the shower with Townsend. Officer Semanovick then called Captain Kenneth Correll and informed him about the Plaintiff's statement. Captain Correll ordered Lieutenant Bradley and Lieutenant Janice Morris to investigate the matter. Captain Correll also telephoned Officer Castro in the BARC area to make a preliminary assessment of the situation and ordered him to sequester inmates Townsend and James in separate cells. At about 11:45 p.m., Captain Correll telephoned Captain Hopkins, his immediate supervisor, and Warden Ho-

ward Young to notify them of the assault by Townsend.

Two weeks prior to the incident, Captain Correll had counselled Officer Castro regarding the proper intake procedures to be followed in BARC for new prisoners. This was done at the specific direction of Warden Young who was concerned that proper prison policy was not being followed during the processing of new prisoners. In addition, four days before the incident, Staff Lieutenant McNair in the presence of Lieutenant Chaulk had warned Officer Castro that the "detainees/workers were being supervised too loosely.... [and] Mr. Castro should have taken heed and realized that the [BARC] officers have never been told that they could delegate the responsibilities of supervising inmates to other inmates." Docket Item ("D.I.") 84A at A38. Captain Correll, however, did not have any personal knowledge of Townsend's prison record and was not aware that Townsend presented a specific and substantial risk of violence or homosexual aggression to new prisoners. Nevertheless, disciplinary action was taken against Officer Castro for failing to comply with written BARC intake procedures after the incident in order to set an example for the other correctional officers. *Id.*

Howard Young was the warden of Gander Hill on the date of the assault. He had no direct involvement in the intake procedure and was only minimally involved in the investigation. Any other personal involvement in the investigation by Warden Young was limited to a review of the investigatory reports and discussions with Department of Corrections Internal Affairs investigators. Warden Young initiated the prisoner workers program at Gander Hill by granting approval to use inmates to perform general janitorial duties. Although no policies concerning the program were in effect at the time of the incident, Plaintiff has conceded that a screening program would not have revealed that Townsend presented a specific risk of impending injury to the Plaintiff. Finally, John Sullivan was Commissioner of the Department of Corrections when the incident took place. Commissioner Sullivan had no personal involvement in the incident or the investigation thereof.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact that can be resolved at trial and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(b). Any doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Ness v. Marshall,* 660 F.2d 517, 519 (3rd Cir.1981); *Tomalewski v. State Farm Life Insurance Company,* 494 F.2d 882, 884 (3rd Cir.1974). Furthermore, all inferences to be drawn from the underlying facts contained in the evidentiary sources must be viewed in light most favorable to the party opposing the motion. *Hollinger v. Wagner Min. Equipment Co.,* 667 F.2d 402, 405 (3rd Cir.1981) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3rd Cir.1976)).

The standard for summary judgment mirrors the criteria for a directed verdict under Federal Rule of Civil Procedure 50(a). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In this context, the appropriate judicial inquiry under Rule 56 is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *see also Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3rd Cir. 1987). In order to determine whether a jury could reasonably find for only one party, the Court must look to "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The Court must then view the evidence presented in the record through the "schematic light" cast by "the prism of the substantive evidentiary burden" which would govern the jury's determination at trial. *Bushman v. Halm,* 798 F.2d 651, 657 (3rd Cir.1986) (citing *Liberty Lobby,* 477 U.S. at 254, 106 S.Ct. at 2513).

The dispute before the Court on this motion centers on the determination of

whether the Plaintiff can satisfy the elements of a claim under 42 U.S.C. § 1983. In order to sustain a cause of action under Section 1983 against a state official, the Plaintiff must establish two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct in question deprived the Plaintiff of rights, privileges or immunities secured by the Constitution of laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The Defendants in the present action do not contest that their conduct satisfies the "under color of state law" requirement because they are state employees. D.I. 85 at 1. The inquiry on this motion for summary judgment, therefore, is directed to whether the Plaintiff has been "deprived" of a constitutional interest held under the fourteenth amendment. The Defendants in this motion have the burden of producing credible evidence that would entitle them to a directed verdict if not controverted at trial. *Adickes v. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). If the Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial", then it is appropriate for the Court to grant summary judgment in favor of the Defendants. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Bushman*, 798 F.2d at 657.

### III. THE FEDERAL LIBERTY INTEREST

Because Section 1983 provides redress only when state employees infringe those rights "secured by the Constitution and laws of the United States", *see, e.g., Paul v. Davis*, 424 U.S. 693, 700–01, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Smith v. Spina*, 477 F.2d 1140, 1143 (3rd Cir.1973), the Plaintiff must first demonstrate the implication of a constitutionally protected "interest" before questioning whether the Defendants' conduct resulted in his "deprivation." The Plaintiff claims a constitutionally provided liberty interest to be protected from physical or sexual assault by fellow prisoners.

The Supreme Court recognized that the fourteenth amendment covered such a basic personal right in *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977), when it held that "[a]mong the historic liberties ... protected [by the Due Process Clause] was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." The Plaintiff's status as a prisoner at the time of the sexual assault does not, however, deny him the right to rely upon the protection afforded by the fourteenth amendment. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984) (no "iron curtain" separates prisons from the reach of the Constitution). In this setting, the Third Circuit held in *Curtis v. Everette*, 489 F.2d 516, 518 (3rd Cir.1973), that a prisoner may maintain a Section 1983 action seeking relief for injuries inflicted by another prisoner under the Due Process Clause of the fourteenth amendment. Because the Plaintiff appears to have established such a liberty interest in this case, the Court's inquiry turns to the legal standard under the fourteenth amendment for determining whether the Defendants' behavior deprived the Plaintiff of his liberty interest.

### IV. STANDARD TO DETERMINE DEPRIVATION OF LIBERTY INTEREST

In *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), the Supreme Court held that because Section 1983 does not contain the word "willfully", a civil rights plaintiff does not have the burden of proving that the state official acted with "a specific intent to deprive a person of a federal right." In subsequent cases involving this issue, the Supreme Court has rejected the notion that every state tort committed by a state officer acting under the color of state law constitutes a violation of section 1983. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Paul v. Davis*, 424 U.S. at 699, 96 S.Ct. at 1159;

*Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court decided to resolve the issue of whether compensation is constitutionally required when a government official's act causing injury to life, liberty or property is "merely negligent." The court made it clear that the Due Process Clause forbids certain types of government conduct in order to prevent "governmental power from being 'used for purposes of oppression.'" *Daniels,* 474 U.S. at 331–32, 106 S.Ct. at 665 (quoting *Murray's Lessee v. Hoboken Land and Improvement Co.,* 59 U.S. (18 How.) 272, 277, 15 L.Ed. 372 (1855)). The "touchstone" of the Due Process Clause is "to secure the individual from the arbitrary exercise of the powers of government." *Id.* 474 U.S. at 331, 106 S.Ct. at 665 (citing *Hurtado v. California,* 110 U.S. 516, 527, 4 S.Ct. 111, 116, 28 L.Ed. 232 (1884)) (quoting *Bank of Columbia v. Okely,* 17 U.S. (4 Wheat.) 234, 244, 4 L.Ed. 559 (1819)); *see also Monroe v. Pape,* 365 U.S. at 172, 81 S.Ct. at 476 (the essential element of a Section 1983 action is abuse by a state official of his official position). Consequently, the court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663 (emphasis in original). This conclusion is based on the premise that simple negligent conduct by state officials does not constitute a "deprivation" within the meaning of the Due Process Clause of the fourteenth amendment. The court, however, left open the question of "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protection of the Due Process Clause." *Id.* at 334 n. 3, 106 S.Ct. at 667 n. 3.

In Counts 19 and 21 of the Complaint, D.I. 1, the Plaintiff alleges that Correctional Officers Castro and Pacheco are liable under Section 1983 for depriving Plaintiff of a constitutional right "to be free from unjustified intrusions on personal security" by knowingly violating prison regulations at the Gander Hill facility when they entrusted the Plaintiff to the custody of another prisoner during the intake procedure. *See* D.I. 84 at 8. The Plaintiff contends that special orders were in effect at the Gander Hill facility on March 28, 1983, which required correctional officers on duty in the BARC area to "monitor detainees while showering or while conducting other activities." [1] *Id.* at 3. The parties do not disagree that Officers Castro and Pacheco violated the "assignment orders." There is disagreement, however, whether the violation of the BARC orders by the correctional officers amounted to something more than "mere negligence" under the undisputed facts of this case.[2] It is

---

1. The Plaintiff also refers to Defendant Warden Young's Responses to Plaintiff's Interrogatories to establish that a prison policy existed that "[n]o pretrial detentioners were, and are not presently, entrusted to prisoner-workers." D.I. 84A at A26. In addition, disciplinary action was taken against the correctional officers and Captain Correll because there was a "clear violation of the 'assignment orders'.... The order clearly states, 'officers assigned this duty will perform the following duties,' spraying and showering of detainees is the responsibility of the officer or officers assigned, not that of the inmate/detainee worker assigned." D.I. 84A at A36. Although the Defendants argue that the standing BARC order does not require correctional officers to "monitor detainees while showering", it will be assumed for the purpose of this motion that the Plaintiff's characterization of the policy at Gander Hill is correct. *See Bushman v. Halm,* 798 F.2d at 656.

2. The Plaintiff asserts that the correctional officers' violation of the standing BARC orders constitutes more than "simple negligence." Nevertheless, it is well settled that the violation of a statute or administrative regulation may constitute negligence *per se* if the person was part of the class the statute or administrative regulation was intended to protect. *Martin v. Herzog,* 228 N.Y. 164, 126 N.E. 814 (1920) (Cardozo, J.); *Castillo v. United States,* 552 F.2d 1385 (10th Cir.1977); *see generally,* W. Prosser and W. Keeton, *Torts* § 36 at 229–231 (5th ed. 1984). According to Prosser and Keeton, "the effect of such a rule is to stamp the defendant's conduct as negligence, with all of the effects of common law negligence, but with no greater effect." W. Prosser and W. Keeton, *Torts* § 36 at 230 (citing *Seim v. Garavalia,* 306 N.W.2d 806 (Minn. 1981)); *see also Restatement (Second) of Torts* § 500, comment e. In fact, the Defendants concede that the conduct of the correctional officers was negligent. *See* D.I. 84A at A35–A36.

well settled that "although questions of negligence are usually reserved for the factfinder, summary judgment is proper where the facts are undisputed and only one conclusion may reasonably be drawn from them." *Gans v. Mundy*, 762 F.2d 338, 341 (3rd Cir.1985) (quoting *Flying Diamond Corp. v. Pennaluna & Co.*, 586 F.2d 707, 713 (9th Cir.1978)). Thus, when the underlying facts of the dispute are uncontested, the determination of the level of negligence becomes a matter of law. *Gans,* 762 F.2d at 341.

The Defendants argue that the facts of this case do not support Plaintiff's claim of a "deprivation" of a constitutional liberty interest under the result in *Davidson v. O'Lone,* 752 F.2d 817 (3rd Cir.1984) (en banc), *aff'd sub nom. Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed. 2d 677 (1985). In *Davidson,* a New Jersey state prisoner complained that prison officials deprived him of a liberty interest by failing to protect him from assault from another inmate. In that case, the plaintiff received a threatening note from another inmate after testifying at a disciplinary hearing and turned the note over to a civilian hearing officer at the prison. *Davidson v. O'Lone,* 752 F.2d at 819. The hearing officer gave the note to a guard who then delivered it to the defendant Cannon, the Assistant Superintendent of the prison. *Id.* Cannon read the note but did not believe that the situation presented an immediate threat to the plaintiff's safety. *Id.* Thereafter, Cannon asked the hearing officer to give the note to a Sergeant James who received it later that same day. Instead of taking measures to protect the plaintiff, Sergeant James attended to other matters and simply forgot about the note. *Davidson,* 474 U.S. at 352, 106 S.Ct. at 672. Sergeant James then left the prison without taking any action on the threat and even failed to notify the weekend shift about the threat. Two days later, the Plaintiff was severely beaten by the inmate who had threatened him in the note. *Id.* at 345, 106 S.Ct. at 669.

On these facts the District Court concluded that the prison officials negligently failed to take reasonable steps to protect the plaintiff and that such negligence amounted to a constitutional deprivation of the plaintiff's liberty interest under the Due Process Clause. On appeal, the Third Circuit concluded that "[l]iability under Section 1983 may be imposed on prison officials even when the assault has been committed by another prisoner, if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." *Davidson,* 752 F.2d at 828; *see also Colburn v. Upper Darby Tp.,* 838 F.2d 663, 668 (3rd Cir.1988); *Metzger By And Through Metzger v. Osbeck,* 841 F.2d 518, 520 n. 1 (3rd Cir.1988); *accord, Wheeler v. Sullivan,* 599 F.Supp. 630, 640 (D.Del. 1984) (plaintiff was "entitle[d] to recover if he has shown that one or more defendants were deliberately indifferent to a substantial risk that he would incur serious personal injury. He cannot recover, however, if he has failed to establish this degree of culpability on the part of any of the defendants."); *see also Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292 ("[i]n order to state a cognizable claim [under Section 1983 for medical malpractice], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."). Although it accepted the District Court's finding that the defendants acted negligently, the Third Circuit reversed the District Court's judgment. Thus, under the facts in *Davidson,* the defendants were not held liable for their negligent conduct even though the prison officials were aware of the existence of a substantial risk of immediate injury to the plaintiff.

■ Consequently, Defendants argue that the facts of this case do not support Plaintiff's claim of a "deprivation" of a constitutional liberty interest under the result in *Davidson.* In the present case, Defendants have introduced evidence in the form of an affidavit by Cathy Guessford

Thus, the question is whether the violation of the BARC orders by Officers Castro and Pache-

co amounted to gross negligence or reckless indifference to the safety of the Plaintiff.

that states: "[t]here is nothing in the Department [of Corrections's] file on James Townsend which suggests that, prior to March 28, 1983, James Townsend had a violent disposition or was a dangerous inmate." D.I. 82, ¶ 4. In fact, the record suggests that Townsend had only committed a few minor rules infractions. Furthermore, neither Castro nor Pacheco believed Townsend "exhibited any violent or aggressively homosexual tendencies" and neither had any "personal knowledge or information from other sources that indicated these detainees were possessed of such tendencies" prior to March 28, 1983. *See* Castro Affidavit, D.I. 81, ¶ 4; Pacheco Affidavit, D.I. 83, ¶ 4. Because Plaintiff has failed to introduce any evidence that suggests a reasonable jury could find that the Defendants were aware that Townsend presented a specific risk of violent homosexual attack to new prisoners in the BARC area, the Defendants conduct does not amount to gross negligence or reckless indifference sufficient to maintain an action under Section 1983.

■ Plaintiff argues, on the other hand, that Officers Castro and Pacheco "acted recklessly and in deliberate disregard to the inherent risks associated with a pretrial detainee being entrusted to the care of an unsupervised inmate."[3] D.I. 84 at 10. Plaintiff fails, however, to specify the nature and extent of the "inherent risks" associated with a pretrial detainee being entrusted to the care of an unsupervised inmate. Presumably, Plaintiff contends that there exists an "inherent risk" of homosexual rape when a pretrial detainee is left unattended with a prison inmate. Nonetheless, it should not be presumed as a matter of law that every time an individual is left unattended with a prisoner that a

homosexual rape will occur. To imply that a risk of homosexual assault existed in "thin air" in the absence of knowledge of such a specific risk by prison officials would necessarily require them to monitor every single prisoner twenty-four hours a day in order to insure his safety. Moreover, the Supreme Court has rejected the notion that prison officials are absolute guarantors of a prisoner's safety and has held that prison officials need only take "reasonable measures to guarantee the safety of inmates themselves." *Hudson,* 468 U.S. at 526–27, 104 S.Ct. at 3200; *see also City of Canton, Ohio v. Geraldine Harris,* — U.S. ——, —— n. 10, 109 S.Ct. 1197, 1205 n. 10, 103 L.Ed.2d 412 (1989) (city officials can be held liable under Section 1983 only where the failure to act reflects a "deliberate" or "conscious" choice to disregard a known need of the plaintiff). Thus, the Plaintiff has failed to submit any evidence to support an inference that the Defendants ignored an "inherent risk" which was so obvious that they must be assumed to have been aware of it in order to establish the existence of a genuine issue of material fact that the Defendants' conduct amounted to gross negligence or reckless indifference.[4]

Plaintiff further asserts "that an allegation of gross negligence or recklessness is sufficient to charge the Defendants with arbitrary use of governmental power." D.I. 84 at 9. In support of his argument, Plaintiff refers to the Sixth Circuit's decision in *Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277 (6th Cir.1987). This case involved a claim under Section 1983 for damages resulting from a brutal murder of a young woman by an inmate of a county jail in Tennessee who was permitted by a deputy sheriff to drive alone in a fully

3. Plaintiff concedes that the correctional officers "certainly did not intend the consequences of their defiance" of the "assignment orders." D.I. 84 at 12. Thus, there can be no genuine issue of material fact in existence whether the Defendants acted with intent. Therefore, the inquiry must turn toward the Defendants' potential liability for reckless indifference or gross negligence in their handling of the Plaintiff during the intake procedure. *See, e.g., Metzger,* 841 F.2d at 520 n. 1. For purposes of this motion,

the Plaintiff's use of the terms "reckless indifference" or "deliberate disregard" will be considered synonymously with the term "gross negligence."

4. The Court refuses to infer that a prison official's generalized knowledge of confinement problems, including sexual aggression and violence is sufficient in itself to warrant the "knowledge" necessary to establish liability.

equipped official county police car. The parents of the murder victim alleged that the sheriff's policy of entrusting the fully equipped patrol car to an inmate deprived their daughter of her life without due process of law when he cruised the streets alone in the patrol car and stopped her car and murdered her. After first recognizing that "something less than intentional conduct but more than simple negligence might invoke due process protection", the Court stated:

> We acknowledge that the term "gross negligence" evades easy definition. In our view, a person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow.

*Id.* at 282. The court concluded the defendants should have appreciated the risk of permitting a convicted felon to have unsupervised use of a police car. *Id.* The court also determined that the risk of harm ceased to be speculative after the defendants learned of the fact that the inmate had been stopping civilians in another county and took no steps to halt his behavior.

Given the fact that the defendants in *Nishiyama* had knowledge of a specific risk of impending harm, it is not surprising that the Court concluded their conduct constituted gross negligence or recklessness so as to permit an action for damages under Section 1983. Unlike *Nishiyama,* the record in the present case is devoid of any facts that demonstrate the correctional officers had any knowledge that Townsend presented a substantial risk of impending harm. Thus, as a matter of law, the conduct of Officers Castro and Pacheco does not constitute gross negligence or reckless indifference so as to support the Plaintiff's cause of action under Section 1983.

In conclusion, because the Plaintiff has failed to establish the existence of an element essential of his case which he would bear the burden of proof at trial, no reasonable juror could find by a preponderance of the evidence that the Plaintiff was deprived of a constitutional interest under the fourteenth amendment sufficient to maintain a cause of action under Section 1983. Consequently, the Court must grant summary judgment in favor of the Defendants on Counts 19 and 21 of the Complaint. D.I. 1.

## V. SUPERVISORY LIABILITY

In Counts 23 and 24 of the Complaint, the Plaintiff sets forth an alternative base for holding the supervisory officials Captain Correll, Warden Young and Commissioner Sullivan liable for damages under Section 1983. The Plaintiff's principal contentions are that these Defendants are liable for: (1) failing to properly supervise the correctional officers in order to prevent a pattern of constitutional violations; and (2) knowing of and acquiescing in ineffective procedures for processing new inmates at Gander Hill.

It is now settled that traditional concepts of *respondeat superior* do not apply to civil rights actions brought under Section 1983. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). In order to determine liability for supervisory officials, the inquiry is directed not on the conduct of the subordinate officials but rather on the supervisor's participation in causing the alleged deprivation of constitutional rights. For example, in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed. 2d 561 (1976), the Supreme Court rejected the plaintiff's argument that a supervisory public official has an affirmative constitutional duty to supervise and discipline his subordinates so as to prevent violations of constitutional rights. Accordingly, the court held that even where a pattern of constitutional violations by subordinates is shown, supervisory officials do not violate the constitutional rights of the victims of such misconduct unless they have played an "affirmative part" in that misconduct. *Id.* at 377, 96 S.Ct. at 607.

In *Commonwealth of Pennsylvania v. Porter,* 659 F.2d 306, 336 (3rd Cir.1981), the Third Circuit addressed whether an "affirmative role" could be inferred from su-

pervisory inaction to constitutional violations by their subordinates and held that to be legally responsible, supervisory officials "must have played an affirmative role in the deprivation of the plaintiffs' rights." In *Porter,* the members of the Borough Council received citizen complaints about a series of incidents in which one member of the Borough Police Department had violated the constitutional rights of citizens but failed to take disciplinary or any other action to discourage repetition of the same conduct in the future. In reversing the District Court's judgment against the Council members, the Third Circuit concluded that the Council had not violated the plaintiffs' rights despite their knowledge of a pattern of misconduct by one of their subordinates because "the Council members' official actions constitute[d] no more than inaction and insensitivity." *Id.* at 337. Thus, *Porter* demonstrates that an "affirmative role" cannot be established to hold a supervisory official liable when the officials conduct is "merely a failure to act." *Id.* at 336.

In a civil rights action against state hospital supervisory officials, this Court first addressed the issue of whether the plaintiff must demonstrate that the supervisory official had knowledge of constitutional violations or patterns thereof in order to establish that he played an "affirmative link" in the misconduct. *Gann v. Schramm,* 606 F.Supp. 1442 (D.Del.1985). In *Gann,* the plaintiffs alleged that three supervisory officials at the Delaware State Hospital were responsible for the suicide of their son for failing to formulate and enforce adequate policies at the hospital. *Id.* at 1452. The Court stated, however, that in order to find the supervisors liable, the "[p]laintiff must demonstrate that the Defendants' inaction occurred in the face of knowledge that the institution was failing to adequately protect the individual's constitutional rights." *Id.* at 1451. The Court granted the defendants' motion for summary judgment because merely "[s]howing that individual officials violated a person's constitutional rights on an isolated occasion is not sufficient to raise an issue of fact as to whether adequate policies and protection were implemented." *Id.*

In *Chinchello v. Fenton,* 805 F.2d 126, 133 (3rd Cir.1986), the Third Circuit reviewed the prior case law involving supervisory liability and recognized that "some Courts of Appeal have been more willing than ours to infer supervisory approval of unconstitutional conduct from inaction on the part of the supervisor." *See, e.g., Turpin v. Mailet,* 619 F.2d 196, 201 (2nd Cir. 1980); *Withers v. Levine,* 615 F.2d 158, 161 (4th Cir.1980). The plaintiff in *Chinchello* contended that the Director of the Bureau of Prisons violated an affirmative constitutional duty to train his subordinates so as to protect his constitutional rights from invasion. *Chinchello,* 805 F.2d at 132. The Court recognized that other courts have found liability for supervisory inaction only when there is evidence of both: "(1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id.* at 133 (citing to *Orpiano v. Johnson,* 632 F.2d 1096, 1101 (4th Cir.1980)) (prison supervisor's failure to act may constitute deliberate indifference in the face of a pervasive risk as shown by a pattern of past similar incidents); *see also Colburn,* 838 F.2d at 673. Without alleging a prior pattern of similar constitutional misconduct, the court concluded the plaintiff could not satisfy the essential element of supervisory knowledge when the facts did not support the inference that the supervisory official was "aware of a specific and substantial risk of impending injury to another in his custody and responded with deliberate indifference to whether that injury would occur." *Chinchello,* 805 F.2d at 133 n. 9.

### 1. *Warden Howard Young*

■ Warden Young was not directly involved in the intake processing of the Plaintiff. The Warden, however, had drafted the proper intake procedures for new prisoners to be followed by the BARC correctional officers. *See* D.I. 84A at A41–A42;

*see also* D.I. 79 at 110006–7, 110124–138, 100079–93. The Plaintiff asserts that Warden Young may be held liable for failing to supervise the BARC regulations because he did not adopt any policies relating to the screening of the prison workers program at Gander Hill. Because the evidence previously discussed demonstrated that the Defendants were not aware that Townsend presented a specific and substantial risk of impending injury to new prisoners, the Plaintiff must show that Warden Young had knowledge of *and* subsequently played an "affirmative role" in the violation by either approving of or acquiescing in a pattern of constitutional violations in order to prove liability.[5] Nevertheless, the same evidence unequivocally shows that by issuing orders for the correctional officers to follow prison policy he was actually concerned about the problem, not indifferent. Furthermore, the fact that Captain Correll and Officer Castro were officially disciplined after the incident for violating the BARC policy demonstrates that Warden Young did not approve of or acquiesce in their conduct. Since the Plaintiff has introduced no evidence that suggests the Warden ever approved of or acquiesced in the violation of the policy not to leave new prisoners unattended during the intake procedure, the Plaintiff's allegations are insufficient to impose liability on Warden Young as a matter of law.

### 2. *Captain Correll*

■ The same analysis is true for Captain Correll. The Plaintiff contends, however, that Captain Correll can be held liable for failing to supervise Officers Castro and Pacheco so as to prevent them from violating the BARC orders not to leave new detainees unattended with prison workers. On March 28, 1983, Captain Correll served as Shift Commander at Gander Hill during the time that the Plaintiff was assaulted by Townsend and supervised by Officers Castro and Pacheco. It is undisputed that Captain Correll had no direct responsibility or participation in the processing of the Plaintiff. As previously discussed, the record indicates that approximately two weeks prior to the incident, Captain Correll followed Warden Young's instructions and advised the correctional officers that inmate workers were not to have any physical contact with new prisoners. Correll Deposition, D.I. 84A at A69–A70. In addition, Captain Correll testified at his deposition that four days before the incident Lieutenant Chaulk, accompanied by Staff Lieutenant McNair, counselled Officer Castro to monitor the inmates' work habits and not to give them a free reign. *Id.* Moreover, in recommending that Officer Castro be disciplined for negligence in the performance of his duties, Captain Correll noted that "the severity of what happened will not be played down in any sense of the word.... I feel that Mr. Castro should be held accountable for his negligence and lack of supervision which ultimately caused the incident. I feel that an example in this case should be made so that others will realize the gravity of the life and death responsibilities they will encounter in this profession." *Id.* at 38. Certainly, this evidence indicates that Captain Correll did not acquiesce in the violation and even demonstrates his disapproval of it. There is not even a scintilla of evidence in the record to support an inference that Captain Correll ever "communicated a message of approval to the offending subordinate" to violate the prison policy. *See Chinchello*, 805 F.2d at 133. In the absence of evidence that Captain Correll's inaction communicated a message of approval or acquiescence of violating the prison policy, the Plaintiff's allegations are insufficient to impose liability on Captain Correll as a matter of law.

### 3. *Commissioner Sullivan*

■ Finally, with respect to Commissioner Sullivan, Plaintiff concedes that he is not liable for failing to supervise the correctional officers. Instead, Plaintiff contends

---

**5.** In fact, Plaintiff's counsel at oral argument admitted that even if a policy to screen the background and prison records of inmates prior to allowing them to become workers had existed on March 28, 1983, it would not have revealed that Townsend presented a risk of violent homosexual attack.

that Commissioner Sullivan is liable for the sexual assault by Townsend because Gander Hill Prison was not "equipped as of March 28, 1983 with any kind of audio or visual monitoring system in the area where newly committed detainees shower." D.I. 84 at 18. Plaintiff believes that such a failure constitutes a breach of Commissioner Sullivan's statutory duty to manage and control the institutional labor under Delaware law. *See* 11 Del.C. §§ 6502(a), § 6517. The Plaintiff's claim lacks foundation, however, because Commissioner Sullivan played no role in the planning or development of the Gander Hill Facility. *See Cohen v. City of Philadelphia,* 736 F.2d 81, 86 (3rd Cir.1984).

Thus, Plaintiff has failed to meet the burden of proving that there exists a genuine issue of material fact whether these Defendants had knowledge of a specific and substantial risk of impending injury to the Plaintiff. Since the Plaintiff has failed to establish each and every element necessary to state a cause of action for supervisory liability, the Court must grant summary judgment in favor of the Defendants on Counts 23 and 24 of the Complaint. D.I. 1.

### VI. PENDENT STATE CLAIMS

Since the Court has dismissed the Plaintiff's federal claims asserted under Section 1983 which form the basis of jurisdiction in this case under 28 U.S.C. § 1343, the remaining pendent state claims alleged in Counts 20, 22 and 25 of the Complaint, D.I. 1, are hereby dismissed for lack of subject matter jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1965); *Broderick v. Associated Hosp. Serv. of Philadelphia,* 536 F.2d 1, 8 n. 25 (3rd Cir. 1976); *Braden v. University of Pittsburgh,* 477 F.2d 1, 4 n. 5 (3rd Cir.1973).