John Vernon CHAPMAN, Jr., Plaintiff,

v.

Cathy GUESSFORD and Major
Barry Hawlk, Defendants.

Civil Action No. 92–83–JJF.

United States District Court,
D. Delaware.

March 30, 1996.

John Vernon Chapman, Jr., Pro Se.

Susan P. Tussey, Deputy Attorney General, Wilmington, Delaware, for Defendants.

## MEMORANDUM OPINION

FARNAN, District Judge.

### I. INTRODUCTION

John Vernon Chapman, a state prisoner, initiated this 42 U.S.C. § 1983 action against Cathy Guessford ("Guessford"), the Records Custodian at the Delaware Correctional Center ("D.C.C."), and Major Barry Hawlk ("Hawlk"), the Security Superintendent at D.C.C. Chapman was transferred to the D.C.C. in Smyrna, Delaware from the Roxbury Correctional Institution ("Roxbury") in Hagerstown, Maryland on July 10, 1991 pursuant to the Interstate Agreement on Detainers ("IAD").

Chapman alleges that (1) he was illegally detained in Delaware for a period of thirty-eight days after he was released by the Delaware courts because Guessford failed to adhere to the policies and procedures of the IAD and that this illegal detention caused Chapman to miss a parole hearing in Maryland; (2) that while in Delaware, he was improperly placed in Administrative Segregation for thirteen days; (3) that Hawlk

failed to follow procedure to monitor Chapman's behavior while in Administrative Segregation; (4) that Hawlk improperly accused Chapman of a disciplinary violation while in Administrative Segregation; and (5) that he was improperly placed with a sentenced inmate while in Administrative Segregation.

The Defendants contend that (1) Guessford properly followed procedures under the IAD, and that she could not release Chapman until she received a "Form 9" from the Delaware Attorney General's office verifying that he was ready to go back to Maryland (D.I. 54 at 3); (2) Chapman was properly placed in Administrative Segregation because of his disorderly behavior and was monitored daily in accordance with prison policies and procedures (D.I. 54 at 6–7); (3) Chapman was informed of his infraction at a September 5 hearing, but did not have a final hearing or any disciplinary action because he was transferred back to Maryland (D.I. 54 at 7); (4) Chapman has not proven that Hawlk had any involvement in any of the disciplinary decisions (D.I. 54 at 10); and (5) Chapman was not an unsentenced inmate (D.I. 54 at 8).

A bench trial was held in this matter and the parties thereafter submitted post-trial briefs in support of their respective positions. This Memorandum Opinion shall constitute the Court's Findings of Fact and Conclusions of Law.

## II. BACKGROUND

### A. Procedures under Interstate Agreement on Detainers

Delaware is one of the states that has adopted the Interstate Agreement on Detainers, which establishes procedures by which a member state may procure a prisoner from another member state for trial. *Diggs v. Owens*, 833 F.2d 439, 441–442 (3d Cir.1987), *cert. denied*, 485 U.S. 979, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988). Under the IAD, an inmate serving time in one state may waive extradition in order to temporarily return to another state to resolve charges pending against him. *See* 11 Del.Code §§ 2540–2550. While the inmate is absent from the custodial correctional facility pursuant to the IAD, he continues to receive statutory good time and

credit on his sentence in the custodial state. (Guessford, Tr. at 4). Once the inmate signs the detainer form waiving extradition to the requesting state, he may remain in the requesting state for up to 180 days. (Guessford, Tr. at 5).

After an inmate arrives at the Delaware Correctional Center, it is the policy that he remain in the D.C.C. until a hearing is held on the pending charges. The D.C.C. Records Department is notified the day before the court hearing by a form which indicates to what court location the inmate must be transported. After the hearing is conducted, the inmate remains in Delaware until the Attorney General's Office forwards a "Form 9" to the D.C.C. Records Department. Form 9 provides the result of the hearing and any sentence that the inmate has received in Delaware, and authorizes the inmate to return to the custodial state. Upon receipt of Form 9, the D.C.C. Records Department notifies the State Detective for Delaware to have the inmate picked up for transport. The transport of the inmate to the custodial state does not occur immediately upon receipt of Form 9 by D.C.C., and sometimes a delay can occur. (Guessford, Tr. at 6–7).

### B. Chapman's Detainer to Delaware

On July 10, 1991, Chapman was transferred from Roxbury Correctional Institution ("Roxbury") in Hagerstown, Maryland, to D.C.C., pursuant to the IAD. (DX 9, at 3, Maryland Dept. of Corr. Chronological Synopsis); (DX 5 at 2 (Superior Court Docket).) He was brought to Delaware for resentencing to add restitution to his sentence imposed in Delaware on March 6, 1990. (Letter from McDonald to Del Pesco, July 24, 1991.) Chapman had signed the form waiving extradition, requesting that he be returned to Delaware to have the charges resolved. (DX 1; Guessford, Tr. at 9.)

According to the court transportation schedules, Chapman was scheduled to appear before various courts during his stay in Delaware. On July 15, 1991, he was scheduled to appear in Kent County for warrants; on July 17, he was scheduled for an arraignment in Superior Court, New Castle County; and on

August 12, he was scheduled for a case review in Superior Court, New Castle County. (Guessford, Tr. at 13.) The D.C.C. Records Department was notified of the court dates the day prior to the scheduled appearance. (Guessford, Tr. at 21.)

On August 7, 1991, Chapman appeared before Judge Susan Del Pesco, and agreed to restitution, and his sentence was amended to add restitution. (DX 6, *State of Delaware v. Chapman*, Cr.A. No. IN 89110994, 0914, Del Pesco, Judge (Del.Super.Ct. August 7, 1991).) On August 12, 1991, Chapman appeared before the Superior Court in New Castle County for a case review day, where two additional charges against Chapman were nolle prossed by the State because of the restitution ordered at the August 7, 1991 court appearance. (Guessford, Tr. at 15.) The August 7 restitution agreement had incorporated an amount of restitution for the August 12 charges.

When the guards came to take Chapman to the August 12, 1991, hearing, Chapman refused to leave his cell, claiming that he was supposed to be in Maryland. Prison guards had to use force to get him to leave his cell, handcuffing him to force him to get on the bus. (DX 13, Report on Use of Force.) Because of his behavior, Chapman was written up for failing to obey an order. (DX 12, Incident Report, August 12, 1991.) Upon his return to the D.C.C., Chapman was transferred to a "Pre–Hearing Detention" for disorderly and threatening behavior, subject to review every 24 hours to determine whether or not he warranted continued restricted confinement. (DX 14, D.C.C. Administrative Transfer, August 12, 1991, by Cain). Prison guards also filed a Disciplinary Report about Chapman's refusal to obey an order, and the Shift Supervisor concluded that it should be referred to a Disciplinary Hearing. (DX 14). Chapman was given notice of this disciplinary charge at a preliminary hearing held on September 5, 1991, but because he was transferred back to Maryland soon thereafter, a hearing was never held and Chapman was never disciplined. (D.I. 54 at 7.) Chapman was checked every day by prison guards who each determined that he should remain in segregated confinement. He stayed in detention until August 25, 1991, when he was released due to the need to make room for escapees. (DX 15, Pre–Hearing Detention Report.) During that time, Chapman shared a cell with a sentenced inmate, who was serving a sentence of life plus nine years for armed robbery and murder.

The time period under dispute here is from August 12 to September 10, the time elapsed from Chapman's last case hearing on pending charges to the receipt of Form 9 by the D.C.C. from the Delaware Attorney General. On August 15, Chapman wrote a letter complaining that he had been released from Delaware by the courts and that he would miss his August parole hearing in Maryland if not transported back to Maryland. On the back of the letter is a response, undated, stating that Chapman was on the list to go back to Maryland. On August 29, Chapman filed a grievance asking why he was still in Delaware when he had been released by the Delaware courts. The Records Department at the D.C.C. received a Form 9 concerning Chapman on September 10, 1991. (Guessford, Tr. at 20.) On September 13, 1991, Chapman was returned to Maryland. (Guessford, Tr. at 20; DX 9, Letter from Field to Gift, October 24, 1991.) On October 24, 1991, the Records Department received a second Form 9 concerning Chapman, due to the amended sentence that Chapman received. (Guessford, Tr. at 22, 23–24.)

Chapman missed his parole hearing in Maryland in August, 1991 because he remained in Delaware pursuant to the IAD. (Guessford, Tr. at 25.) However, at his rescheduled parole hearing held after his return to Maryland, Chapman was denied parole because he had several additional detainers that had to be adjudicated prior to being considered for parole. (Guessford, Tr. at 25–26).

## III. DISCUSSION

### A. *Procedural Due Process*

#### 1. *Guessford's Conduct Concerning The Release Date*

 The Court construes Chapman's allegations that he was illegally detained in Delaware and missed his August parole hearing in Maryland as a result of Guessford's al-

leged failure to follow the procedures under the IAD as an alleged violation of his rights under the Fourteenth Amendment of the United States Constitution. A civil rights complainant must show that conduct by the defendant deprived plaintiff of a right or privilege secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988).[1]

Although Chapman alleges that Guessford deliberately kept him in Delaware, violating the provisions of the IAD and thus denying him his August parole hearing in Maryland, the evidence adduced at trial establishes that the D.C.C. Records Department could not release him without a Form 9. The Form 9 did not arrive in the D.C.C. Records Department until September 10, and the Records Department transferred Chapman two days later. Accordingly, the Court concludes that Chapman has failed to establish any conduct by Guessford or the Records Department violating the provisions of the IAD, or that led to the deprivation of his parole hearing.

### 2. Chapman's Allegations Against Major Hawlk

Chapman next alleges that he was improperly placed in administrative segregation, and that while in administrative segregation, Defendant Hawlk failed to follow procedure to monitor Chapman's behavior. Moreover, Chapman contends that Hawlk imposed another unwarranted disciplinary violation upon Chapman for an incident that occurred in July.

A plaintiff must establish that a supervisor played an affirmative role in the deprivation of constitutional rights. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Heine v. Receiving Area Personnel*, 711 F.Supp. 178, 186 (D.Del.1989). An affirmative role cannot be established by a mere failure to act. *Id.* The Court concludes that Chapman has failed to establish evidence at trial that Hawlk played an affirmative role in

his placing him in Administrative Segregation, or in monitoring him while in Administrative Segregation, or in writing him up for disciplinary action. Chapman did not establish any evidence at trial implicating any involvement by Hawlk at all. Accordingly, the Court concludes that Chapman has failed to prove that Defendant Hawlk had an affirmative role in the alleged deprivation of Chapman's constitutional rights, and therefore, judgement must be entered for Defendant Hawlk.

### 3. Housing with Sentenced Inmate

Chapman claims that, as a pre-trial detainee he should not have been confined with a sentenced inmate while incarcerated in Delaware. Pre-trial detainees who are lawfully held pending a trial have no liberty interest in being housed separately from sentenced inmates. *See, e.g., Hoover v. Watson*, 886 F.Supp. 410, 416–17 (D.Del.), *aff'd* 74 F.3d 1226 (3d Cir.1995). Moreover, Chapman is not a "pre-trial" detainee in the typical sense, in that he was a sentenced inmate temporarily in Delaware for a hearing on a sentencing from a trial held in 1990. Accordingly, the Court concludes that Chapman had no constitutional right to be housed separately from sentenced inmates, even assuming he was a pre-trial detainee.

### IV. CONCLUSION

For the reasons discussed, the Court will enter a FINAL JUDGMENT ORDER in favor of the Defendants, Cathy Guessford and Major Barry Hawlk.

---

**1.** Although the IAD is an congressionally sanctioned interstate agreement, and as such a federal law, violation of the IAD is not an infringe-

ment of a constitutional right. *Diggs*, 833 F.2d at 442.