841 F.2d 518
 45 Ed. Law Rep. 530
 Charles METZGER, a minor By and Through his parents and
natural guardians George METZGER and Dolores R.
Metzger, his wife and George Metzger and
Dolores Metzger
v.
Richard OSBECK, Individually and in his capacity as a
teacher at Log College Junior High School and Centennial
School District and Centennial School Board and Eugene
Grossi, Stetson Avery, George J. Kelly, Patricia Brown,
James H. Dunn, Raymond Regan, David R. Meyers, Barbara
Rabinowitz, Hans Zutter, Individually and in their capacity
as members of the Centennial School Board and Harry L.
Clark, Individually and in his capacity as Principal of Log
College Junior High School and Ronald Y. White.
Appeal of Charles METZGER, a minor, and George Metzger and
Dolores R. Metzger.
 No. 87-1453.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 20, 1988.
Decided March 11, 1988.
 
 Stacey Smith (argued), John M. McClure, Doylestown, Pa., for appellants.
 John Philip Diefenderfer, Newtown, Pa., John A. Orlando (argued), James J. Donohue, White & Williams, Philadelphia, Pa., for appellees.
 Before GIBBONS, Chief Judge, WEIS and GREENBERG, Circuit Judges.OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 This civil rights action, filed pursuant to 42 U.S.C. Sec. 1983, arises from a poolside disciplinary encounter between teacher Richard Osbeck and student Charles Metzger at Log College Junior High School in Bucks County, Pennsylvania, from which Metzger emerged with a broken nose and other injuries requiring hospitalization. The district court granted a motion for summary judgment in which Osbeck, principal Harry L. Clark, supervisor Ronald Y. White, the Centennial School District, the Centennial School Board, and its members all joined and from which Metzger and his parents appeal. Upon plenary review of defendants' motion, we find that there is a genuine issue of material fact regarding Osbeck's intentions when disciplining Metzger. Accordingly, we will reverse the district court's order of June 26, 1987 entered on the motion to the extent that it dismissed the Metzgers' substantive due process claim and pendent state claims against Osbeck. We will, however, otherwise affirm the order.
 
 
 2
 In reviewing a grant of summary judgment, we apply the same test used by the district court and thus unless we find that no genuine issue as to any material fact remains for trial and that the moving parties are entitled to summary judgment as a matter of law, we must reverse. Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir.1987); Fed.R.Civ.P. 56(c). At the summary judgment stage, the judge's role "is not himself to weigh the evidence and determine the truth of the matter," but to determine whether the evidence creates a genuine issue of material fact which, "because [it] may reasonably be resolved in favor of either party," "properly can be resolved only by a finder of fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether a factual dispute exists, the judge must view the evidence in the light most favorable to the nonmoving party. Tigg, 822 F.2d at 361. If from this perspective the judge discerns a "genuine" dispute over a "material" fact, the motion must be denied. Sorba v. Pennsylvania Drilling Company, Inc., 821 F.2d 200, 203 (3d Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988).
 
 
 3
 We agree with the district judge's statement in his memorandum opinion granting defendants' motion for summary judgment that a reasonable jury could find the following facts:
 
 
 4
 Metzger was enrolled in a swimming class taught by defendant Richard Osbeck ('Osbeck'), the chairman of the school's physical education department. Metzger was failing swimming for failure to participate in class, but had not been a source of disciplinary problems for Osbeck. January 28, 1983 was the last day of the marking period, so Osbeck used class time for a recreational swim. Metzger had a written excuse from class that day: he recalls that he was suffering from the flu and had a swollen leg. During class, Metzger traded baseball cards with several fellow students on the pool deck.
 
 
 5
 Several feet away, Osbeck stood talking to a student teacher. Osbeck overheard Metzger using inappropriate language in the course of a conversation with a female student about baseball cards. He walked to where Metzger was standing, and, standing behind him, placed his arms around Metzger's neck and shoulder area. Holding Metzger in that position, Osbeck quietly asked him, 'Was that you using foul language?,' and, when there was no response, said 'That kind of language is unacceptable in this class. Do you understand me?' In the course of the questioning, Osbeck's arm moved slightly upward, from Metzger's Adam's apple to under his chin; at some point, Metzger felt pressure on the underneath portion of the chin and had to stand up on his toes. Osbeck then released Metzger, intending to turn him around. Instead, Metzger, who had lost consciousness at some point, fell face down onto the pool deck.
 
 
 6
 As a consequence of his fall, Metzger suffered lacerations to his lower lip, a broken nose, fractured teeth and other injuries requiring hospitalization.
 
 
 7
 The district judge granted Osbeck summary judgment as he concluded that Metzger had suffered no due process violations because a jury in the circumstances of the case could not infer that Osbeck intended to injure him or acted in reckless disregard of a risk of which he should have been aware. The other defendants were granted summary judgment as there was no school policy authorizing the conduct of which plaintiffs complained, there was no legal or factual basis for vicarious liability of the supervisors, and there was no showing that Osbeck had received inadequate training. See Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Kibbe v. City of Springfield, 777 F.2d 801, 805 (1st Cir.1985), cert. dismissed, --- U.S. ----, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987); Commonwealth v. Porter, 659 F.2d 306, 321 (3d Cir.1981), cert. denied, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982).
 
 
 8
 We have concluded that we cannot agree with the district judge to the extent he found that the restraint employed by Osbeck "in the circumstances in which it was employed, does not permit the inference that Osbeck intended to injure Metzger or recklessly disregarded a risk of injury of which he should reasonably have been aware."[1] A decision to discipline a student, if accomplished through excessive force and appreciable physical pain, may constitute an invasion of the child's Fifth Amendment liberty interest in his personal security and a violation of substantive due process prohibited by the Fourteenth Amendment. See Hall v. Tawney, 621 F.2d 607, 611 (4th Cir.1980) (construing Ingraham v. Wright, 430 U.S. 651, 673-74, 97 S.Ct. 1401, 1413-14, 51 L.Ed.2d 711 (1977)); see also Kidd v. O'Neil, 774 F.2d 1252, 1259 (4th Cir.1985).[2] The district court observed that the most commonly cited framework for evaluating the constitutional import of allegations of excessive force is that employed by Judge Friendly in Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973):
 
 
 9
 In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.
 
 
 10
 Even if physical reinforcement of a teacher's verbal admonitions is pedagogically appropriate and condoned by school disciplinary policy, we believe a reasonable jury could find that the restraints employed by Osbeck, if responsible for the student's loss of consciousness, exceeded the degree of force needed to correct Metzger's alleged breach of discipline and that the substantial injuries sustained by Metzger served no legitimate disciplinary purpose. If the jury is persuaded that Osbeck employed those restraints with the intent to cause harm, Osbeck will be subject to liability for crossing the "constitutional line" separating a common law tort from a deprivation of a substantive due process.
 
 
 11
 In reaching this conclusion we note that it is undisputed that Osbeck intentionally placed his arms around Metzger's neck and shoulders. While we recognize that Osbeck disclaims any ill-will toward Metzger and that the circumstances of the encounter suggest he was motivated by a legitimate disciplinary desire to admonish, not injure, the student, we cannot say that a reasonable jury could not believe that Osbeck intended the consequences of his act or believed them to be a substantially certain result of it. Thus we cannot deprive plaintiffs of an opportunity to have a jury resolve the issue of Osbeck's intent in their favor. See Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 900 (3d Cir.), cert. dismissed, --- U.S. ----, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).
 
 
 12
 In this regard we observe that a jury might reasonably conclude that in view of Osbeck's position as a physical education instructor and wrestling coach, he was aware of the inherent risks of restraining Metzger. If it did, it could discredit Osbeck's disclaimer of punitive intent and could find that he intended to cause Metzger harm or believed harm was substantially certain to attend his actions. In short, we cannot permit a summary judgment to be granted to a defendant who, by an intentional act, may have caused serious harm simply because he says he did not intend the harm. Thus, the evidence at this stage of the proceedings is not so one-sided that Osbeck must prevail as a matter of law. Anderson, 477 U.S. at 251, 106 S.Ct. at 2512. Our result is consistent with the general approach that a court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases "much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder." Watts v. University of Delaware, 622 F.2d 47, 52 (3d Cir.1980) (quoting In re Yarn Processing Patent Validity Litigation, 498 F.2d 271, 288 (5th Cir.), cert. denied, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974) (citations omitted)).
 
 
 13
 In view of the aforesaid, we will reverse the dismissal of the Metzgers' substantive due process claim and pendent state claims against Osbeck and remand the matter for further proceedings consistent with this opinion. We will, however, affirm the dismissal of all other constitutionally based claims against Osbeck and all claims against the other defendants for the reasons set forth in the district court's opinion.[3]
 
 
 14
 WEIS, Circuit Judge, concurring and dissenting.
 
 
 15
 Plaintiff alleges an infringement of rights under the substantive due process requirements of the Fourteenth Amendment. He has, however, not produced enough evidence to demonstrate a constitutional violation.
 
 
 16
 Evidence giving rise to a common law tort will not necessarily establish a claim under section 1983. The mere fact that a state official has committed a tort will not suffice to support a cause of action for constitutional harm. "Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." Daniels v. Williams, 474 U.S. 327, 332, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986).
 
 
 17
 The incident here was a disciplinary encounter between a teacher and a pupil. The majority posits that, in this context, a constitutional violation occurs if the teacher uses excessive force and causes appreciable physical pain. The court's analysis recognizes that the teacher constitutionally was permitted to utilize physical contact in disciplining the student. Only if the force employed was excessive will a section 1983 claim be established.
 
 
 18
 A teacher's constitutional liability is not determined by what is "pedagogically appropriate and condoned by school disciplinary policy," as the majority implies. Those considerations may be relevant to the state tort action but not to the substantive due process claim. Constitutional standards do not vary from school district to school district nor do they depend on the educational philosophy of each individual school administration.
 
 
 19
 I begin with the proposition that there is a substantive due process entitlement to personal integrity which the state may infringe only in limited circumstances. Youngberg v. Romeo, 457 U.S. 307, 315, 102 S.Ct. 2452, 2457, 73 L.Ed.2d 28 (1982). That right of bodily security protects students from excessive physical force when school authorities mete out discipline. Hall v. Tawney, 621 F.2d 607 (4th Cir.1980). In positive terms, corporal punishment does not per se violate a public school child's constitutional rights. See id. at 611.
 
 
 20
 The majority here apparently adopts the test set out in Hall. There, the court proposed the following inquiry: whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that the punishment amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. Id. at 613. See also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Plaintiff advances the theory that the extent of his injuries, which he contends are serious, provides proof of liability. If the injury were less substantial, I suspect the majority would affirm the summary judgment here.
 
 
 21
 In my view, however, it is the intent to use excessive force--not the extent of injury--which is dispositive of the constitutional claim. The extent of injury at times may reflect the amount of force used or even suggest malice on the part of the state official. A savage beating, for example, may result in injuries that directly relate to the number and force of the blows. No such correlation exists here.
 
 
 22
 Nor is the intent to cause physical contact a controlling element. A teacher who slaps an unruly child to enforce obedience in a classroom obviously commits a volitional act with intent to inflict pain. Those facts, however, do not establish a constitutional violation; they do not demonstrate the use of excessive force--the hallmark of abuse of governmental position.
 
 
 23
 On the other hand, if the teacher hits a small child so hard as to knock her down a flight of steps with resulting serious injury, the intent to strike the pupil again is present. The evidence of intent to use excessive force could be perceived by the predictably serious injury resulting from the blow and the child's position atop the staircase.
 
 
 24
 Other examples demonstrate the nuances of the problem. A teacher aims a light slap at a student's shoulder, but the pupil moves suddenly, deflecting the teacher's hand. As a consequence, the teacher's ring strikes the child's eye, resulting in a tragic injury. Or perhaps the teacher does no more than gently shove a disobedient child with a hidden impairment and causes an unforeseeable serious injury.
 
 
 25
 These contrasting situations illustrate the principle this court expounded in Rhodes v. Robinson, 612 F.2d 766 (3d Cir.1979). In Rhodes, an inmate sought recovery for an emotional injury stemming from prison guards' illegal conduct. We said that the critical element was "not the nature of the plaintiff's injury but the manner of the infliction of that injury." Id. at 772. The Due Process Clause "extends to protection from an official's abusive exercise of his powers to inflict grossly undue harm." Id. Acknowledging that emotional injury could be compensable, we concluded that "[w]here a person suffers injury as an incidental and unintended consequence of official actions, the abuse of power contemplated in the due process and eighth amendment cases does not arise." Id.
 
 
 26
 The focus on abuse of power is a prime distinction between constitutional violations and routine torts. That concern counsels caution in relying on extent of injury to determine when conduct rises to the level of a constitutional violation. It is true that tortfeasors must take a victim as they find him. And it is also true that it is no defense against unintended damages that the act would not have caused as serious an injury to the average person.[1] But these concepts affect the amount of damages, not liability.
 
 
 27
 By contrast, it must be conceded in this case that the teacher could use physical force, and therefore the initial physical conduct was lawful. The defendant's act of pushing the pupil's chin upward, alone, is not likely to cause injury or even pain. At most one would expect momentary discomfort, which in itself would not present an unconstitutional method of emphasizing the correctional message to a student deserving of a strong admonition.
 
 
 28
 Nothing in the record, as the district judge and I read it, would allow a reasonable jury to conclude that the defendant's actions were meant to cause any injury, let alone one of the type that occurred. The injuries were unexpected and unintended. Plaintiff has failed to produce evidence which would justify any inference to the contrary.
 
 
 29
 This case is nothing but a routine tort matter which properly should be decided by a state court. In devoting time and effort to litigation of this nature, federal courts deprive parties with cases raising federal questions of the attention they deserve. In my view, this case has gone far enough. I would affirm the entry of summary judgment in favor of Osbeck as well as the other defendants.
 
 
 30
 I also must disagree with the majority's footnote that this case can be sent to the jury on a theory of "gross negligence." In cases of this nature, the use of "gross" as opposed to "simple" negligence will not serve to overcome the distinction between an ordinary tort and a constitutional violation. As Chief Judge Gibbons pointed out in his dissent in Davidson v. O'Lone, 752 F.2d 817 (3d Cir.1984), aff'd sub nom. Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986): "The prevailing view is that there are no 'degrees' of care or negligence, as a matter of law; there are only different amounts of care as a matter of fact; and 'gross negligence' is merely the same thing as ordinary negligence, 'with the addition,' as Baron Rolfe once put it, 'of a vituperative epithet.' " See id. at 853 (quoting W. Prosser, Handbook of the Law of Torts 182 (4th ed. 1971)).
 
 
 31
 Nor would an instruction on gross negligence be consistent with the charge given in the school discipline trial in Hall and repeated in Justice v. Dennis, 834 F.2d 380 (4th Cir.1987), an arrestee case. In the latter decision, the court of appeals approved a charge that "directs the jury to consider whether the force 'shocks the conscience' and appears to have been applied 'maliciously and sadistically' for the purpose of causing harm." Id. at 383.
 
 
 32
 I suggest that the term "gross negligence" only multiplies the complexities of distinguishing between common law tort and constitutional violation. Although the Supreme Court reserved deciding whether "something less than intentional conduct, such as recklessness or 'gross negligence' will trigger the substantive protections of the Due Process Clause," Daniels v. Williams, 474 U.S. at 334 n. 3, 106 S.Ct. at 667 n. 3, I find no persuasive reason for further muddling the blurred line between state law torts and actions under section 1983.
 
 
 33
 I dissent.
 
 
 
 [1]
 Although the Supreme Court has had "no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause," Daniels v. Williams, 474 U.S. 327, 334 n. 3, 106 S.Ct. 662, 667 n. 3, 88 L.Ed.2d 662 (1986), this court has recently reaffirmed its position as stated in Davidson v. O'Lone, 752 F.2d 817, 828 (3d Cir.1984) (in banc), aff'd sub nom., Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), that when a state actor has "infringed a liberty interest by intentional conduct, gross negligence, or reckless indifference, or an established state procedure, the matter is actionable under section 1983." Colburn v. Upper Darby Township, 838 F.2d 663, 668 (3d Cir.1988). Because we conclude that a genuine issue of material fact exists as to Osbeck's intent, we are not required to address the issue of his potential liability for reckless indifference to the alleged dangers inherent in his handling of Metzger or for gross negligence in disciplining him. We do point out, however, that under Colburn it appears likely that at a trial of this case charges on gross negligence or recklessness will be appropriate
 
 
 [2]
 In Justice v. Dennis, 834 F.2d 380, 383 (4th Cir.1987), Kidd v. O'Neil was partially overruled but not on the point for which we cite the case
 
 
 [3]
 The other constitutional claims against Osbeck which we do not reinstate are based on a denial of procedural due process, infringement of Metzger's rights to free speech and free expression and rights under the Ninth Amendment. As noted by the district court, despite the broad sweep of their complaint, plaintiffs rely exclusively on theories of substantive and procedural due process to support their contention that Osbeck's use of excessive force violated Metzger's constitutional rights. We see no basis for the procedural due process claim here. See Ingraham v. Wright, 430 U.S. at 672-83, 97 S.Ct. at 1413-19. Thus, except for the substantive due process and pendent state claims, the plaintiffs' bases for recovery are either without merit or abandoned
 
 
 [1]
 The criminal law has a parallel. A person engaged in unlawful activity of a minor degree may become guilty of a major crime if his victim is in poor physical condition. A victim of a purse snatching who has a heart attack attributable to the incident may subject the perpetrator to homicide charges