877 F.2d 245
 JORDEN, Jr., Ulus, Appellant,
v.
NATIONAL GUARD BUREAU, Departments of the Army and The Air
Force, Temple, Herbert R., Jr., Major General (PA), The
Adjutant General, Commonwealth of Pennsylvania; Campbell,
John D., individually and as Colonel, Pennsylvania Air
National Guard Base Detachment Commander; and Frisby, Henry
C., individually and as Major, Pennsylvania Air National
Guard Chief, Administration.
 No. 88-1955.
 United States Court of Appeals,
Third Circuit.
 Argued April 18, 1989.
Decided June 6, 1989.
 
 Frank Finch, III (argued), and McDaniel, Dade, Wheeler & Walwyn, Philadelphia, Pa., for appellant.
 Paul C. Clark, Captain (argued), U.S. Air Force, Trial Atty., General Litigation Div., Office of the Judge Advocate Gen., Washington, D.C., Michael M. Baylson, U.S. Atty., James G. Sheehan and Lois W. Davis, Asst. U.S. Attys., U.S. Attorney's Office, Philadelphia, Pa., for appellee, Herbert R. Temple, Jr.
 Ernest D. Preate, Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Gwendolyn T. Mosley (argued), and Kate L. Mershimer, Deputy Attys. Gen, Office of Atty. Gen., Harrisburg, Pa., for appellees, Sajer, John D. Campbell, and Henry C. Frisby.
 Before SEITZ, SLOVITER and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 The plaintiff, Ulus Jorden, Jr., appeals from the district court's order of summary judgment of October 25, 1988, in favor of the defendants on his First Amendment claim, arising from the termination of his employment with and discharge from the Pennsylvania Air National Guard [PaANG], and from the district court's order of October 19, 1988, denying his motion for entry of default judgments against the defendants. We will reverse the order for summary judgment, affirm the order denying default judgments, and remand for further proceedings.
 
 I.
 
 2
 The case has a long and somewhat involved history. Jorden was employed as a civilian technician with the PaANG from April or May, 1956, two years after his enlistment in the PaANG on April 6, 1954, until November 9, 1984, when he was discharged with the rank of master sergeant.[1] As a civilian technician Jorden was, at the time of his termination, a federal employee under the National Guard Technicians Act of 1968. See 32 U.S.C. Sec. 709(d). This act requires that such technicians be military members of the National Guard of the United States.[2] See 32 U.S.C. Sec. 709(b). Thus, the Adjutant General of the PaANG must terminate the civilian employment of anyone separated from the National Guard.[3] See 32 U.S.C. Sec. 709(e)(1).
 
 
 3
 The PaANG, along with all state air national guard entities, must be federally recognized, a status that requires that its members meet federal standards prescribed for their particular grades. See 10 U.S.C. Sec. 8077; 32 U.S.C. Secs. 101(6)(D), 301. Among its other duties, the National Guard Bureau, a joint bureau of the Department of the Army and the Air Force, see 10 U.S.C. Sec. 3040, grants and withdraws such recognition. See Jorden v. National Guard Bureau, 799 F.2d 99, 101 (3d Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987). Upon federal recognition, members of state air national guard units become members of the Air National Guard of the United States, a federal military service. See 10 U.S.C. Secs. 8261(a), 8351(a).
 
 
 4
 On November 19, 1983, putatively as a result of his conduct, which included protests alleging improper acts by his superior officers,[4] Jorden was ordered to undergo a psychiatric examination, based upon which the psychiatrist concluded that he was "quite impaired from a psychiatric standpoint," and therefore unsuitable for retention in service. As a result, further evaluation was indicated, but Jorden refused three times to obey orders to report for inpatient medical evaluation, denominated as "special training." Accordingly, Jorden was honorably discharged as not medically qualified for worldwide duty or retention in the PaANG under applicable regulations on October 3, 1984. His technician status with the PaANG was then terminated on November 9, 1984.
 
 
 5
 In an application of January 27, 1985, and an amended application of May 15, 1985,[5] Jorden requested relief from the Air Force Board for the Correction of Military Records (AFBCMR) [Board].[6] In particular, he asked that his discharge be voided and that he be reinstated in the PaANG. In his application, Jorden asserted that the orders requiring him to report for medical evaluation were not in compliance with national guard regulations, and were issued in retaliation for his attempts to protest official misconduct. After considering Jorden's application at a meeting on September 24, 1986,[7] the Board denied him relief and so advised him in a letter of November 7, 1986. Jorden has never instituted any action to set aside the Board's decision.
 
 
 6
 Jorden did, however, on February 7, 1985, long before the Board acted, file a complaint, which he later amended, in the district court. The defendants in the amended complaint were the National Guard Bureau and Major General Emmett H. Walker, Jr., its chief, who were federal defendants, and Major General Richard M. Scott, the Pennsylvania Adjutant General, and Colonel John D. Campbell and Major Henry Frisby, PaANG officers, who were state defendants. However, during the course of these proceedings, Lt. General Herbert R. Temple, Jr., and Major General Sajer replaced Walker and Scott in office and have, respectively, been substituted for them as defendants.[8]
 
 
 7
 Jorden alleged that he had been unlawfully discharged from his employment as a civilian technician with the PaANG in retaliation for exercising his First Amendment rights; that his discharge was as the result of racial discrimination; that acts and practices of the defendants violated his Fourteenth Amendment rights and as well as his rights under 42 U.S.C. Secs. 1983, 1985(3) and 1986; and that statements made by the state defendants gave rise to a cause of action for defamation under Pennsylvania law, over which he requested the district court to exercise pendent jurisdiction. Jorden sought declaratory and injunctive relief, including reinstatement, and back pay, as well as compensatory and punitive damages, and attorney's fees and costs.[9] The defendants, without answering, moved to dismiss and, on September 24, 1985, the district court granted their motions under Fed.R.Civ.P. 12(b)(1) and (6), finding Jorden's federal claims barred under Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). The court also dismissed the state common law claim, declining to exercise pendent jurisdiction over it.
 
 
 8
 Jorden then appealed, and on August 27, 1986, we affirmed the dismissal of the damages claims under the authority of Chappell, as well as all claims against the National Guard Bureau. However, we reversed the district court's dismissal of his claim for injunctive relief ordering his reinstatement in the PaANG and remanded the case to the district court for further proceedings.[10] See Jorden v. National Guard Bureau, 799 F.2d at 111. The district court received our mandate on November 3, 1986, and no action was taken by the defendants, who had not yet filed answers to Jorden's amended complaint, to seek a stay of the judgment.[11] On October 5, 1987, the Supreme Court denied the state defendants' petition for a writ of certiorari. --- U.S. ----, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987).
 
 
 9
 While the defendants' motions to dismiss extended the time for them to file answers, see Fed.R.Civ.P. 12(a), they did not promptly do so after the case was remanded, and thus Jorden filed a motion for default judgments on January 19, 1988. The state defendants and Temple filed motions for leave to file answers out of time, on February 3 and February 12, 1988, respectively. Temple filed his answer on February 2, 1988, and again on November 4, 1988.[12] The state defendants filed their answer on February 3, 1988. Jorden filed a motion to strike Temple's answer on February 4, 1988. Temple filed a motion for summary judgment on April 25, 1988 and on June 20, 1988, the state defendants joined in this motion.
 
 
 10
 By its order of October 19, 1988, the district court denied Jorden's motion for default judgment and motion to strike Temple's answer, and granted all the defendants' motions to file answers out of time. By its order of October 25, 1988, the district court granted the defendants' motions for summary judgment with respect to Jorden's First Amendment claim and denied them with respect to Jorden's racial discrimination claim, granted the parties a ninety-day discovery period, and set a March 20, 1989, trial date.
 
 
 11
 On December 8, 1988, by agreement with the defendants pursuant to Fed.R.Civ.P. 41(a)(1)(ii), Jorden voluntarily filed a stipulation of dismissal, with prejudice, of all his claims not dismissed by the district court's October 25, 1988, order, thus permitting an immediate appeal from the summary judgment in favor of the defendants on his First Amendment claim.[13] On December 19, 1988, Jorden filed his notice of appeal of the district court's orders of October 19 and 25, 1988, which denied his motion for entry of default judgments, permitted the defendants to answer, and granted them partial summary judgment.
 
 II.
 
 12
 On Jorden's first appeal we remanded the matter and indicated that if he could demonstrate that his discharge violated his constitutional rights he would be entitled to reinstatement. 799 F.2d at 111. In considering the merits of Jorden's First Amendment claim on remand, the district court, although recognizing that "this is not a case in which I am asked to review a decision of the [Board]," nevertheless stated that since Jorden's "[First Amendment] allegation [in his civil complaint] is the same as the allegations he made before the [Board][14].... I am required to review the Board's findings under the abuse of discretion standard stated in Dougherty [v. United States Navy Bd. for Correction of Naval Records], 784 F.2d [499,] at 501 [(3d Cir.1986) ]."[15] Jorden v. Sajer, No. 85-670, slip op. at 8-9, 1988 WL 113365 (E.D.Pa. Oct. 25, 1988).[16]
 
 
 13
 After "reviewing the record before the [Board]," the district court concluded that
 
 
 14
 [the] Board's determination is supported by substantial evidence and that this is not the type of case in which I should set aside the Board's decision. The Board determined that the order by which the plaintiff was commanded to undergo further medical evaluation was proper. Since the plaintiff failed to comply with this order, he was properly found to be not medically qualified for world wide duty or retention. Moreover, the Board found that the plaintiff's allegation of fraud and waste were investigated and found to be unsupported. Finally, the Board decided that the plaintiff was not discharged in retaliation for his complaints and reports or wrongdoing. These findings are clearly supported by evidence of record. In fact, the record suggests that the plaintiff had difficulty accepting supervision and following procedure which lead to concern over his ability to perform in the Air National Guard. Accordingly, I will affirm the [Board's] findings with respect to the plaintiff's retaliation claims and grant the defendant's motion for summary judgment on the plaintiff's first amendment claims.
 
 
 15
 Slip op. at 9-10.
 
 
 16
 The difficulty with the district court's approach is that the court could not affirm or set aside the decision of the Board, which had not been directly challenged by Jorden and thus was not before the court for review. Thus, this action is simply not a Dougherty--type review proceeding. In fact, the district court action was commenced at almost the same time that Jorden submitted his application to the Board. Indeed, the district court at first seemed to recognize that Jorden's case was independent of the Board proceeding, but then went on to consider the matter as if it were reviewing the decision of the Board.[17] Thus, the issue the district court should have addressed was not whether the Board's decision should be upheld, but rather whether the court should have given it preclusive effect.[18] We will accordingly make that determination.
 
 
 17
 It is well-settled that "[o]rdinarily res judicata and collateral estoppel may be invoked when 'an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' " Rosenfeld v. Department of the Army, 769 F.2d 237, 240 (4th Cir.1985) (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)). See Facchiano v. United States Dep't of Labor, 859 F.2d 1163, 1167 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989); Stillians v. State of Iowa, 843 F.2d 276, 281 n. 3 (8th Cir.1988); Purter v. Heckler, 771 F.2d 682, 691 (3d Cir.1985); Restatement (Second) of Judgments Sec. 83 and comment b (1982).[19] However, "the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). Thus, " '[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.' " Id., 456 U.S. at 481, 102 S.Ct. at 1897 (quoting Montana v. United States, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979)). See also Fowler v. Califano, 596 F.2d 600, 603 (3d Cir.1979); City of Pompano Beach v. FAA, 774 F.2d 1529, 1538-39 n. 10 (11th Cir.1985). Furthermore, it is particularly important for a party to be able "to present live witness testimony in a proceeding that necessarily turns largely on retaliatory motivation, and thus demands that the decision-maker weigh witness credibility." Nasem v. Brown, 595 F.2d 801, 807 (D.C.Cir.1979) (citation omitted).
 
 
 18
 Here, it is clear that the Board's proceedings completely lacked the attributes necessary to accord preclusive effect to its decision.[20] In fact, the Board's proceedings were more investigative than judicial. When Jorden's application for correction of his records was received by the Air National Guard, it was referred to PaANG for review and for additional information. PaANG replied, explaining why Jorden was discharged and its explanation was accepted by the reviewing officer who recommended on August 16, 1985, that Jorden's application be denied. This recommended report was sent to Jorden by letter of September 13, 1985, for his review and comments and he took that opportunity to file what he called a "rebuttal" dated September 30, 1985 to the review.
 
 
 19
 The Board then considered Jorden's application at a meeting on September 24, 1986, solely on the written record and determined that "insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice." It indicated that his complaints had been thoroughly investigated and there was no evidence to support his allegation that he had been the victim of retaliation. Thus, it concluded that there was "no basis upon which to recommend favorable action on the applicant's requests." It then indicated that Jorden's "case is adequately documented and it has not been shown that a personal appearance with or without counsel will materially add to our understanding of the issue(s) involved. Therefore, the request for a Formal Hearing is not favorably considered." Accordingly the Board upheld Jorden's termination.[21]
 
 
 20
 We do not imply that the Board did not conscientiously review the matter, that it violated any procedural rules, or that the record does not support its result. Nevertheless, even acknowledging all that, the procedures followed by the Board do not remotely resemble the type of proceedings which can be given preclusive effect in a district court for the case does, at least at this time, involve disputed issues of fact regarding the reasons for Jorden's discharge. Cf. Ness v. Marshall, 660 F.2d 517, 519 (3d Cir.1981) (on summary judgment motion where intent is a substantive element of the cause of action the principle is particularly apt that a court should not draw factual inferences in favor of the moving party and should not resolve genuine issues of credibility.) Inasmuch as the only possible basis for the summary judgment was the preclusive effect of the Board's decision, and the defendants do not suggest, as indeed they hardly could at this time, that even without it there are no genuine issues of material fact as to why Jorden was discharged, the order for summary judgment must be reversed. See Metzger by and through Metzger v. Osbeck, 841 F.2d 518, 519 (3d Cir.1988).[22]
 
 III.
 
 21
 The remaining issue is whether the district court properly denied Jorden's motion for default judgments, a decision we review under an abuse of discretion standard. See Scarborough v. Eubanks, 747 F.2d 871, 875 (3d Cir.1984); Hritz v. Woma, 732 F.2d 1178, 1180-81 (3d Cir.1984). We see no error in this ruling. First of all, we point out that "we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz, 732 F.2d at 1180-81. See Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3d Cir.1982).[23] Second, the defendants' neglect at most merely delayed Jorden in realizing satisfaction of his claim. Feliciano, 691 F.2d at 656-57. Third, there is no doubt that the defendants have evidence which, if accepted, will constitute a complete defense to the case. Hritz, 732 F.2d at 1181. Finally, there is nothing in the record indicating that the defendants' conduct went beyond mere negligence, rising to the level of "flagrant bad faith" or "contumacious behavior." See Emcasco Insur. Co. v. Sambrick, 834 F.2d 71, 75 (3d Cir.1987); Scarborough, 747 F.2d at 875.
 
 IV.
 
 22
 For the foregoing reasons we will vacate that portion of the district court's October 25, 1988, order awarding summary judgment to the defendants on Jorden's First Amendment claim, and remand the matter to the district court for proceedings consistent with this opinion. Of course, if Jorden is successful on the remand his remedies will be limited to those allowed under our first opinion. See 799 F.2d at 111 n. 17. We will affirm the district court's order of October 19, 1988, which denied Jorden's motion for default judgments against the defendants, granted the defendants' motions for leave to file answers out of time, and denied Jorden's motion to strike Temple's answer. The parties will bear their own costs on the appeal.
 
 
 
 [1]
 Civilian technicians provide various support services to national guard units, such as equipment and facility maintenance, aircraft operations, and clerical work
 
 
 [2]
 While there can be exemptions under the regulations, Jorden does not contend he was exempt
 
 
 [3]
 The Adjutant General, an officer of the state, administers personnel matters involving state national guard members, including civilian technicians
 
 
 [4]
 In his amended complaint, Jorden alleged that time cards were fraudulently completed and/or destroyed; that certain government equipment was missing, apparently having been stolen; that government funds were improperly used to cover printing and mailing expenses incurred to organize a dinner dance; and that his claims of racial discrimination were ignored. He also contended that his protests resulted in unjustified low performance evaluations
 
 
 [5]
 We refer to these applications as a single application
 
 
 [6]
 "The Secretary of a military department ... acting through boards of civilians of the executive part of that military department, may correct and military record of that department when he considers it necessary to correct an error or remove an injustice." 10 U.S.C. Sec. 1552(a). See 32 C.F.R. Secs. 865.0 et seq
 
 
 [7]
 Although Jorden requested a hearing on his application, the Board did not exercise its discretion to hold the hearing. See 32 C.F.R. Sec. 865.9(a)
 
 
 [8]
 Campbell and Frisby have since been promoted as they are, respectively, referred to as General and Colonel in their brief. We refer to Temple hereafter as the federal defendant as a matter of convenience rather than Walker
 
 
 [9]
 Jorden's Fourteenth Amendment and section 1983 claims were asserted only against the state defendants
 
 
 [10]
 On the appeal, contrary to other federal courts which have addressed the issue, see, e.g., Bois v. Marsh, 801 F.2d 462, 467 (D.C.Cir.1986), we rejected "a per se exhaustion [of administrative remedies] requirement for military personnel." After noting that such exhaustion is "not require[d] ... where the administrative remedy would be inadequate," we observed that the Board "cannot afford Jorden satisfactory relief," since as "a federal Board, [it] cannot order Jorden's reinstatement to the state Guard," and as "a military Board ... [it] is arguably not empowered to reinstate Jorden to his civilian technician position in any event." 799 F.2d at 102-03 n. 5. We also adhered to Dillard v. Brown, 652 F.2d 316 (3d Cir.1981), in which we rejected the balancing test set forth by the Court of Appeals for the Fifth Circuit in Mindes v. Seaman, 453 F.2d 197 (5th Cir.1971), for determining whether a court should hear a particular claim involving the military. The interests to be balanced under Mindes are, inter alia, the importance of the constitutional right asserted and the anticipated extent to which review will interfere with the military mission. 799 F.2d at 111 n. 16
 
 
 [11]
 Temple attributes his delay in answering Jorden's amended complaint to a change of attorneys assigned to defend him; the state defendants attribute their delay in answering to their former counsel's failure to request a stay of this court's mandate while they were pursuing their appeal to the Supreme Court. See Fed.R.App.P. 8(a)
 
 
 [12]
 He apparently filed his second answer because his first had been filed before his motion to file out of time. See Fed.R.Civ.P. 6(b)(2)
 
 
 [13]
 The defendants do not contend that Jorden did not preserve his right to appeal from the district court's denial of his motion for entry of default judgments
 
 
 [14]
 In paragraphs 31 and 32, respectively, of his original and amended complaints, Jorden alleged that
 [t]he activities of the defendants cited herein were intended to suppress the plaintiff's complaints, expressions and protests. In addition, their dismissal of the plaintiff from his employment, accomplished by discharging him from the Pa. ANG, was intended as a way of getting rid of him in retaliation against him because of his complaints, expressions and protests.
 In his amended application to the Board of May 15, 1985, Jorden alleged that he was ordered to undergo a medical examination in retaliation for reporting fraud, waste, abuse and theft of government equipment and services.
 
 
 [15]
 "The district court is to set aside the BCNR action if it finds it to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " 784 F.2d at 501 (citing 5 U.S.C. Sec. 706)
 
 
 [16]
 In choosing to review the Board proceedings, the district court relied on Doyle v. United States, 599 F.2d 984, 1000, 220 Ct.Cl. 285 (1979), cert. denied, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980), for the proposition that Jorden is not "entitled to 'many independent chances to prevail.' " Slip op. at 12 n. 5. But in Doyle the plaintiffs directly challenged the decision of the Army Board for the Correction of Military Records in the Court of Claims, asserting that it "was arbitrary, capricious, and contrary to law." 599 F.2d at 988
 
 
 [17]
 The court did call the case a "hybrid" action in which some of Jorden's claims were presented to the Board and some were not. Thus, it may have regarded the case as partially an action to set aside the decision of the Board. But it was not. Jorden's amended complaint never mentioned the decision of the Board, which is hardly surprising since that decision came more than a year after the amended complaint was filed. Furthermore, our opinion on the first appeal made it quite clear that this was an action for direct relief, not a review proceeding
 
 
 [18]
 Since only a federal determination is involved, we are not concerned with the preclusive effect to be given to state proceedings. See, e.g., Kelley v. TYK Refractories Co., 860 F.2d 1188, 1193 (3d Cir.1988)
 
 
 [19]
 Although the Board's decision implicates issue preclusion, or collateral estoppel, rather than claim preclusion, or res judicata, our analysis is equally applicable to both. See Scooper Dooper, Inc. v. Kraftco Corp., 494 F.2d 840, 844 (3d Cir.1974) (issue preclusion); United States v. Athlone Indus., Inc., 746 F.2d 977, 983 (3d Cir.1984) (claim preclusion). See also Purter, 771 F.2d at 689-90 n. 5
 
 
 [20]
 In view of this conclusion, we need not consider whether there was a sufficient identity of issues before the Board and the court for the Board's decision to be given preclusive effect
 
 
 [21]
 We also point out that Jorden received no discovery in the Board proceedings
 
 
 [22]
 We do not suggest that this case may never be appropriate for summary judgment
 
 
 [23]
 Jorden bears a heavy burden in seeking a default judgment against Temple since "[n]o judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court." Fed.R.Civ.P. 55(e)