**Janet and Marc DOCKERY, personally and on behalf of Sean Dockery, and Deborah and William Johnson, personally and on behalf of Jacob Johnson, Plaintiffs,**

v.

**Tammy BARNETT and Harvey Gregory, in their official and personal capacities, and the Valley Central School District, Defendants.**

**No. 00 CIV. 5481(CM).**

United States District Court,
S.D. New York.

Sept. 19, 2001.

Julie Gaughran, Chappaqua, NY, for plaintiffs.

Vincent P. D'Andrea, Hopewell Junction, NY, for defendants.

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiffs Janet and Marc Dockery, personally and on behalf of their son, Sean

Dockery, and Deborah and William Johnson, personally and on behalf of their son, Jacob Johnson, sue Tammy Barnett, teacher, and Harvey Gregory, principal, in their personal and official capacities, and the Valley Central School District, under 42 U.S.C. § 1983 for violations of their rights to substantive due process under the 14th Amendment to the U.S. Constitution, and for state law claims of battery, gross negligence, intentional and negligent infliction of emotional distress, and loss of companionship, resulting from defendant Barnett's alleged physical abuse of the children at school.

Defendants move for summary judgment on the § 1983 claim.

## FACTUAL BACKGROUND

On a motion for summary judgment, the Court views the facts most favorably to the non-moving party—in this case, the plaintiff.

The infant plaintiffs at bar, Jacob Johnson and Sean Dockery, are two autistic boys with severely limited verbal abilities. During the 1998–99 school year, Johnson and Dockery were students in a self-contained class for autistic students in the East Coldenham Elementary School ("East Coldenham") within the Valley Central School District ("the District"). Johnson was seven years old, and Dockery was five years old during that year. In 1998–99, Tammy Barnett taught Johnson and Dockery in special education classes, and Harvey Gregory was the Building Principal of East Coldenham. Barnett also had taught Dockery during the 1997–98 school year.

Plaintiffs charge that Barnett engaged in the following specific abusive conduct toward Johnson and Dockery in school:

*Toward Johnson*

1. In the fall of 1998, Barnett allegedly force-fed Johnson in the school cafeteria. Johnson was crying and trying to get away while Barnett was trying to open his mouth and push food in. (Def. Ex. E-5 (Lopez Dep. at 45).)

2. On October 15, 1998, Johnson came home with marks and an open wound on his hand. Plaintiffs allege that Barnett grabbed Johnson, leaving a fingernail mark and bruise on his arm. Barnett noted the marks on his hand and arm in Johnson's daily journal, but says that Johnson had caused the marks from biting himself. (D'Andrea Aff. (Barnett Dep. at 35–36) at Ex. A.)

3. On February 26, 1999, Johnson came home with bruises on his right wrist.

4. Teacher's aide Serena Ruggiero claims that on May 20, 1999, Barnett grabbed Johnson with enough force to leave a cut on his arm because he had taken two icons off a chart instead of one. (Gaughran Decl. (Ruggiero Statement at 2.) at Ex. F.) Barnett denies that she grabbed his arm.

5. Ruggiero says that on or about June 16, 1999, Barnett yelled at Johnson to complete his work. When he became upset and began biting his wrist, Barnett allegedly grabbed the child's hand, digging her finger into his finger and leaving a cut; the cut required a Band-Aid. (Id. (Ruggiero Aff. at ¶ 15.))

*Toward Dockery*

1. In the fall of 1998, Barnett grabbed Dockery with enough force to leave a red hand print on his shoulder that was visible for several days. Mrs. Dockery claims that Barnett admitted that she had "grabbed him a little hard," and that "there is a mark on his shoulder." (Gaughran Decl. (Dockery Dep. at 39) at Ex. G.) Barnett denies making such a statement to Mrs. Dockery. (Id. (Barnett Dep. at 60) at Ex. J.)

2. On June 15, 1999—the school's field day—Dockery came home with scratches

on his body. Mrs. Dockery noticed them but did not suspect that they had been inflicted by his teacher. Teacher's aide Kathy Lopez allegedly confirmed that Dockery had received the scratches from Barnett. (Compl. ¶ 21; Johnson Dep. at 20–24, 83–84.). However, Lopez testified in her deposition that Tammy Barnett never touched Sean Dockery. (Lopez Dep. at 39.)

Teacher's aides Kathy Lopez and Laurie Gesso started assisting Barnett in the fall of 1998, and were unfamiliar with procedure in the classroom. Barnett gave them instructions, but was not happy with the results. She asked Principal Gregory to have a meeting with them. (Lopez Dep. at 45.) At a meeting called by Gregory, Lopez claims that she told him about Barnett's trying to "force-feed Jacob." (Id. at 91.). Gesso allegedly told him that Barnett had been "too physical" with the students. (Gesso Dep. at 37–38.)

While Gregory denies that Lopez and Gesso ever said anything to him about Barnett's being too physical, (Gaughran Aff. (Gregory Dep. at 26) at Ex. K.), plaintiffs claim that he told them that teachers are not permitted to put their hands on children, and that he would follow up on their report. According to plaintiffs, Principal Gregory asked Barnett directly if she was being rough with the students. She denied the accusations, and Principal Gregory took no further action until he received another report the following spring.

In June 1999, Serena Ruggiero reported to Principal Gregory that Barnett was handling the children in an inappropriate manner. (Gaughran Aff. (Gregory Dep. at 117) at Ex. K.) Gregory instructed her not to discuss this subject beyond the confines of his office, because he was going to discuss the matter with his superiors. (Id. at 122.)

Also in June 1999, Johnson's parents discovered a gash on one of his fingers (noted *supra* at ¶ 5.). His mother asked him what happened, and he responded, "Tammy angry." The next day Mrs. Johnson sent a note to Barnett asking what had happened to her son's small finger. Barnett responded:

> I apologize for not having a chance to write and explain on Monday. Jacob had a difficult time in his office Monday. He started hitting his leg and knocked his hand on the bottom of the desk hard. He peeled the skin off the top of his finger. I was sitting on the other side of the desk trying to redirect him. He must be associating me with the incident. He did calm down and worked very well after that....

(Gaughran Decl. at Ex. L.)

Mrs. Johnson also called Ruggiero, who initially refused to discuss the matter, saying that she was forbidden from talking with parents about what went on in the classroom. Ruggiero eventually talked with Mrs. Johnson, and told her that Barnett repeatedly had been abusive toward her son and other children in the classroom. On June 21, 1999, Mrs. Johnson had a conversation with teacher's aide Gesso, who allegedly confirmed what Ruggiero had said. However, Gesso testified in her deposition that she never observed Barnett inflict a bruise, cut, or mark on any of the children. (Gesso Dep. at 32, 56.)

On June 21, 1999, Mrs. Johnson brought her concerns to the attention of Principal Gregory, who told her that he would investigate the matter. (Gaughran Decl. at Ex. D.) By letter of June 30, 1999, Mrs. Johnson reported the allegations regarding her son to Superintendent of Schools Arthur Nugent. The letter set forth three specific instances of abuse, allegedly by defendant Barnett, which had left bruises and cuts on her son (October 15, 1999, February 26,

1999, and June 16, 1999) (Id.). Mrs. Johnson then met with Superintendent Nugent, Assistant Superintendent Revelle and Johnson's service coordinator, Sharon Miller.

After an investigation into the situation, Superintendent Nugent gave Barnett the choice of resigning or being fired. (Gaughran Aff. (Barnett Dep. at 79) at Ex. J.). She resigned. All four of the children who had been in Barnett's class for the 1998–1999 school year later were offered ten sessions of therapy at the District's expense.

Plaintiffs allege that as a result of the deliberate indifference of the District and individual school officials, and their policies of (1) failing to supervise or to remove a teacher known to be abusive; and (2) prohibiting employees from communicating with parents about dangers facing their children, Barnett inflicted injury upon the children during school hours, and deprived them of their right to substantive due process. They further allege that the unconstitutional policies resulted in severe pain, suffering, and a trauma during the 1998–99 school year, pronounced behavioral disorders, and "... pathological regression of the skills which had been painstakingly taught to [the infant plaintiffs] at school and at home." (Compl. at ¶ 23.)

Defendants move for summary judgment on the grounds that Barnett's acts, if true, did not rise to a constitutional violation; that the District was not on notice of any pattern or practice of abuse; and that there was no policy prohibiting employees from communicating with parents. They also argue that defendant Gregory is entitled to dismissal on the basis of qualified immunity.

For the reasons stated below, defendants' motion for summary judgment on the § 1983 claim is granted in part and denied in part.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. While Plaintiffs need not produce direct evidence of an alleged civil rights violation, they must be able to produce evidence, in admissible form, that is more than surmise and speculation which is based on their own subjective beliefs. *See Matsushita,* 475 U.S. at 576, 106 S.Ct. 1348.

Plaintiffs have a constitutional "right to be free from the use of excessive force" in the "non-seizure, non-prisoner context." *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246 (2d Cir.2001) (citing *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995)). In determining whether the constitutional line has been crossed, factors to be considered include "the need for the application of force, the relation-

ship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (citing *Metzger v. Osbeck,* 841 F.2d 518, 520 (3d Cir.1988); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973); and *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980)). The malice or sadism must amount to an abuse of power literally shocking to the conscience. *Hall,* 621 F.2d at 613.

Plaintiffs have offered evidence that the force used by Barnett was disproportionate to the need presented. They argue that there was no need for any application of force against the children in Barnett's class, and refer the Court to the testimony of teacher's aides Ruggiero, Lopez and Gesso, who said that the amount of force she used was unnecessary. Defendants respond that plaintiffs have offered no proof of the inappropriateness of Barnett's interventions in the classroom, or as to how a teaching professional might deal with the challenge of instructing autistic children in a classroom setting. While the record does not reveal the "proper" way to handle autistic children in a classroom setting, the observation and testimony of the teacher's aides is enough to create a dispute of fact as to whether Barnett's handling of the children was disproportionate to what was necessary under the circumstances.

This Court next must weigh the severity of plaintiffs' injuries. Plaintiffs have not fared well where psychological damage forms either the sole basis of or is an element of the plaintiff's substantive due process claim. *See, e.g., Lillard v. Shelby Cty. Bd. of Educ.,* 76 F.3d 716 (6th Cir. 1996) (holding that a single slap, which did not result in physical injury, even if given for no legitimate purpose, does not rise to the level of a constitutional violation because it was not so vicious as to constitute a violation of substantive due process); *Abeyta v. Chama Valley Indep. Sch. Dist.,* 77 F.3d 1253, 1258 (10th Cir.1996) (holding that a teacher's repeatedly calling a twelve year-old student a "prostitute," and causing her psychological abuse, constituted a compete abuse of his authority, but that the conduct fell below the constitutional threshold for a substantive due process claim).

In a case similar to the one at bar, *Brown v. Ramsey,* 121 F.Supp.2d 911 (E.D.Va.2000), the parents of a young autistic boy alleged that the child's teacher and teacher's aide had used excessive force while restraining him during "time outs." As part of this child's individualized education program ("IEP"), if he were to become a danger to others, teachers were instructed to physically restrain him "in a safe manner until he demonstrates the ability to control his own impulses." *Id.* at 913. The teachers allegedly put him in a "basket hold," which was accomplished by clasping the boy at the wrists, crossing his arms in front of his body, and pushing his head into his chest. *Id.* The effect was to suffocate him, or cause him to experience a choking sensation. *Id.* The court granted summary judgment to the defendants because the child had sustained no physical injuries, the restraint was only used in a disciplinary context, and the laws of Virginia explicitly authorized the use of physical restraint in certain circumstances. *Id.* at 923. It noted that it could not find any corporal punishment case which survived summary judgment where plaintiffs had sustained no physical injury, but instead claimed Post Traumatic Stress Disorder, or some other psychological injury. *Id.*

In the case at bar, Barnett allegedly force-fed Johnson against his will, and may have repeatedly grabbed the children with enough force to leave a hand print, a fin-

gernail mark, a bruise, or to cause tears. Along with the scratches and bruises, the children have faced severe psychological injuries. Johnson allegedly suffered from an increase in violent and self-injurious conduct, as well as the onset of such behavior as compulsive masturbation, which required him to be placed on an antipsychotic medication. Dockery allegedly became uncharacteristically violent, kicking, head butting and spitting with increased frequency and intensity. On their face, their injuries do not seem particularly serious, but the issue is better reserved for a jury—especially considering that the alleged abuses continued over the course of an entire school year, and plaintiffs in this case are autistic children, who are more vulnerable and less capable of communicating than other children.

The final factor is whether Barnett was "so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Hall,* 621 F.2d at 613. When issues of motive and intent are present, it is rarely appropriate for summary judgment. *Gallo v. Prudential Residential Serv.,* 22 F.3d 1219, 1224 (2nd Cir.1994).

Defendants' motion for summary judgment is therefore denied.

2. Remaining Claims

a. Failure to Supervise Against Gregory and the District

Plaintiffs also sue Principal Gregory, in his official capacity, and the Valley Central School District, alleging that their children were harmed by the District's deliberate indifference and failure to supervise or to remove a teacher known to be abusive. The motion for summary judgment on this claim is also denied.

To hold a government official liable for failure to supervise requires a showing of gross negligence or deliberate indifference as to the behavior of the subordinate employees. *See Villante v. Department of Corrections of the City of New York,* 786 F.2d 516, 519 (2d Cir.1986); *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

There is evidence in the record that the District was on notice of a problem as early as early as the fall of 1998, when Lopez told Principal Gregory that Barnett had aggressively tried to "force-feed" Johnson, and Gesso told him that she thought Barnett was "too physical" with the students. But the District took no action other than asking the teacher whether she was abusing her pupils, until the following June, when Principal Gregory received another report—this time from teacher's aide Ruggiero—that Barnett was handling the children in an inappropriate manner. There is no evidence that he spoke to parents, observed the classroom, or conducted any investigation in response to the aides' concerns.

Whether the District's actions—or inaction—amounted to deliberate indifference is a question of fact best reserved for a jury. The District's motion for summary judgment on this claim is denied.

b. Policy of Prohibiting Communications With Parents

Plaintiffs also allege that the District had an unconstitutional policy of prohibiting employees from communicating with parents about their children, which caused plaintiffs' injury. Their claim is based on remarks made by Principal Gregory to teacher's aide Gesso, that all employees should go to the principal—not parents—to report any problems with students. When asked if she should go to the

parents if she saw an instance of abuse, Gesso testified that Principal Gregory said: "No. You don't notify any parents. That is where it goes from, him. He would be the one that would notify. In other words, I don't have the authority to go to the parents or someone else, even if I wanted to." (Gaugran Aff. (Gesso Dep. at 8–9) at Ex. H.). However, Kathy Lopez, another of plaintiffs' own witnesses, has testified that despite the principal's preference of being the one to communicate with parents, teacher's aides were never actually prohibited from speaking with parents. (Lopez Dep. at 8.)

There is a disputed issue of fact on this point. Summary judgment is denied.

3. Qualified Immunity

Defendant Gregory has also moved for summary judgment on the ground of qualified immunity. That motion also is denied. It is well-established that qualified immunity acts to shield government officials from liability under section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The extent of protection afforded defendants depends upon the "objective legal reasonableness" of defendants' actions "assessed in light of the legal rules that were 'clearly established' at the time [they were] taken." *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727). Defendant is entitled to summary judgment on qualified immunity grounds only if, drawing all inferences in favor of plaintiffs, no rational jury could conclude that it was objectively unreasonable for him to believe that his actions did not violate a clearly established right. *See Culp v. Koenigsmann,* No. 99 Civ. 9557, 2000 WL 995495, at *7 (S.D.N.Y. Jul.19, 2000) (citing *Williams v. Greifinger,* 97 F.3d 699, 706 (2d Cir.1996); *In re State Police Litigation,* 88 F.3d 111, 123 (2d Cir.1996)).

While supervisory officials cannot be held liable under Section 1983 for the acts of their subordinates, *see Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), they may be found sufficiently involved to impose liability by evidence of their: (1) direct participation in the alleged constitutional violation; (2) failure to remedy a wrong after learning of it; (3) creation or maintenance of a policy under which unconstitutional violations occurred; (4) gross negligence in managing subordinates who committed the unconstitutional acts; or (5) exhibiting deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Defendant Gregory was given a report in October 1998 from two classroom aides that one of the teachers in his school was being too physical with a class of autistic children. In response, Gregory took no action besides asking Barnett whether she had abused the children.

The right of children to be free from excessive force in the classroom is a clearly established right. *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246 (2d Cir.2001). If these factual allegations are borne out, a jury could find Gregory personally involved in the unconstitutional deprivation on the basis that he was either grossly negligent in supervising Barnett, or that he exhibited deliberate indifference to the students' rights by failing to act on information that unconstitutional acts were occurring. As a result, I cannot say at this stage of the case that, as a matter of law, the plaintiffs are incapable

of establishing Gregory's liability for the abuse of plaintiffs. *See also Johnson,* 239 F.3d at 249 (affirming denial of summary judgment on qualified immunity because school officials were on notice that the teacher might be dangerous because of prior altercations with students).

This constitutes the decision and order of the Court.